# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JANET M. LEWIS,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:16-cv-1088
Litkovitz, M.J.

**ORDER**

Plaintiff Janet Lewis brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's statement of errors (Doc. 12), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 15).

## I. Procedural Background

Plaintiff filed her application for DIB in August 2012, alleging disability since December 31, 2005 due to hypertension, mitral valve prolapse, arthritis, depression, disc problems in her back, attention deficit disorder, and bipolar disorder. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a hearing before administrative law judge ("ALJ") Theodore W. Grippo. However, when neither plaintiff nor counsel appeared at the hearing in October 2013, the ALJ dismissed plaintiff's hearing request. Plaintiff subsequently appealed the dismissal and the Appeals Council vacated the ALJ's order of dismissal and remanded the case back to the ALJ for further proceedings. A rehearing was held before ALJ David Redmond in July 2014. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On November 21, 2014, the ALJ issued a decision

denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final administrative decision of the Commissioner.

**II. Analysis**

   **A. Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

2

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act on March 31, 2006.
>
> 2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2005, through her date last insured of March 31, 2006 (20 CFR 404.1571, *et seq.*).
>
> 3. Through the date last insured, the [plaintiff] had the following severe impairments: lumbago, attention deficit disorder (ADD), depressive disorder, and anxiety disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ] find[s] that, through the date last insured, the [plaintiff] had residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), subject to the following limitations: (1) unskilled work; (2) no more than occasional personal contacts; and (3) no production quotas.
>
> 6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[1]

---

[1] Plaintiff has past relevant work as a secretary. (Tr. 22, 46)

3

7. The [plaintiff] was born on November 11, 1961, and was 44 years old, which defined her as a younger individual, age 18-49, on the date last insured. (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English. (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed. (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from December 31, 2005, the alleged onset date, through March 31, 2006, the date last insured. (20 CFR 404.1520(g)).

(Tr. 17-23).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled light occupations such as mail clerk (170 jobs regionally), housekeeping cleaner (2,000 jobs regionally), and laundry press operator (400 jobs regionally). (Tr. 23, 50-52).

4

preponderance . . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical Evidence Prior to the Date Last Insured

Plaintiff summarizes the relevant medical evidence prior to March 31, 2006, her date last insured, as follows:

> Plaintiff was seen at Oxford Family Practice (Dr. Bucher) from 2004 through at least 2012 (Tr. 353-397). It should be noted that many of these contacts were phone contacts, and many were for prescriptions or to change prescriptions. Plaintiff was on medications such as Zyprexa, Effexor, Adderall, Oxycontin and Xanax throughout this period (Tr. 375). Many ailments, such as urinary tract infections and sinus infections, were self-diagnosed and treated based on phone contacts (Tr. 376).
>
> Notes from McCullough Hyde Memorial Hospital were submitted. Of note, on 12/6/05 Plaintiff was taking Zyprexa, Effexor, Xanax, and Oxycontin. A medical history of fibromyalgia was noted, diagnosed by Dr. Herzig (Tr. 684-685). [footnote omitted]. She was also diagnosed with scoliosis and a whiplash injury of the neck from an auto accident.

(Doc. 12 at 7).

### E. Specific Errors

On appeal, plaintiff argues that the ALJ: (1) failed to develop the medical evidence of record; (2) did not support her RFC determination with substantial evidence; and (3) did not correctly determine her own credibility nor that of her lay witness. (Doc. 12 at 2).

**1. The ALJ did not violate his duty to fully develop the record.**

Plaintiff argues that the ALJ failed in his duty to develop the medical evidence of record. (Doc. 12 at 14). Specifically, plaintiff argues that the ALJ did not review evidence submitted after the hearing by her counsel and "did not consider the possibility of a retrospective diagnosis." (*Id.* at 15). Plaintiff contends that the ALJ should have sought more information from Dr. Percy Mitchell about a June 2014 medical source statement concerning plaintiff's mental health issues. (*Id.*). Plaintiff contends that the ALJ failed to request additional information from her "treating source" related to the severity of her mental impairment. (*Id.* at 16) (citing SSR 85-16; *Sims v. Apfel*, 530 U.S. 103 (2000); *Richardson*, 402 U.S. at 389). Plaintiff argues that the ALJ failed to obtain a medical expert at the hearing, which could have shed more light on plaintiff's mental health issues, orthopedic impairments, and the onset date of her disability. (*Id.*). Finally, plaintiff contends that evidence submitted post-hearing "should have alerted the ALJ that missing records or a medical expert could have provided a picture of her ability to function mentally." (*Id.* at 17). These records included notes from McCullough Hyde Memorial Hospital in December 2005, which showed that plaintiff was taking several psychotropic medications and OxyContin and which documented a medical history of fibromyalgia, scoliosis, and whiplash injury of the neck. (*Id.*).

Although a claimant seeking disability benefits bears the ultimate burden of establishing her entitlement to such benefits, the ALJ has an affirmative duty to ensure that every claimant

6

receives a "full and fair hearing" and to develop the facts upon which her decision rests. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson*, 402 U.S. at 401. *See also Sims*, 530 U.S. at 110-11 (although the claimant bears the ultimate burden of establishing that he is entitled to disability benefits, courts have recognized that social security proceedings are "inquisitorial rather than adversarial," and it is the ALJ's duty to investigate the facts and develop arguments both for and against granting benefits). The duty to develop the record must be balanced against the plaintiff's "burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination[.]" *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). *See also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (claimant's burden to prove disability). When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed. *Lashley*, 708 F.2d at 1051.

A review of the record and the ALJ's decision shows that the ALJ did not violate his duty to fully and fairly develop the record in this case. As an initial matter, plaintiff was represented by counsel during the ALJ's hearing. Therefore, the ALJ's basic duty to fully and fairly develop the record in this matter did not rise to the heightened duty applicable when a claimant appears during social security proceedings without an attorney or representative. *See Lashley*, 708 F.2d at 1051-52. *See also Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (ALJ does not have heightened duty where claimant is represented by counsel). In this case, plaintiff bears the ultimate responsibility of proving the existence of a disability and producing the medical evidence necessary to substantiate her claim. *See Hackle v. Colvin*, No. 1:12-cv-145, 2013 WL 1412189, at *10-11 (S.D. Ohio April 8, 2013) (Beckwith, J.).

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff does not identify what evidence the ALJ failed to review. To the extent plaintiff argues that the ALJ failed to review Dr. Mitchell's single progress note (Tr. 683), such an error is harmless. First, the ALJ is not required to cite and discuss every piece of evidence in the record. *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted. . . .") (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Second, there is nothing in Dr. Mitchell's note (Tr. 683) or the medical source statement (Tr. 678-80) to suggest that Dr. Mitchell ever related the existence of plaintiff's mental health impairments and limitations prior to her date last insured, which was more than eight years before Dr. Mitchell examined plaintiff. The ALJ was neither required to seek more information from Dr. Mitchell and plaintiff's "treating source,"[3] nor inquire into the 2005 notes from McCullough Hyde Memorial Hospital. The ALJ's duty to develop a complete record does not extend so far as to require the ALJ to act as the claimant's advocate. *Ison v. Astrue*, No. 5:10-cv-286, 2011 WL 4565775, at *8 (E.D. Ky. Sept. 29, 2011). If plaintiff and her counsel perceived the record in this regard was lacking, they had the opportunity to submit additional medical evidence for the ALJ to consider. Indeed, the ALJ kept the record open for fifteen days after the hearing to allow plaintiff to submit additional medical records relevant to the period prior to the date last insured. (Tr. 42-43). Nonetheless, plaintiff never submitted those additional records for the ALJ to consider.

Moreover, the ALJ was not required to call a medical expert. An ALJ has discretion in

---

[3] Plaintiff never identifies the "treating source" to whom she refers. To the extent plaintiff may be suggesting that Dr. Mitchell is her "treating source," she is mistaken. The record shows Dr. Mitchell examined plaintiff only one time. A single office visit does not create the ongoing treatment relationship necessary to apply the treating source rule. *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000, n.3 ("[I]t is questionable whether a physician who examines a patient only three times over a four-month period is a treating source-as opposed to a nontreating (but examining) source.") (citations omitted).

8

determining whether or not to elicit testimony from a medical expert. *See* 20 C.F.R. § 404.1527(e)(2)(iii) ("[ALJs] *may* also ask for and consider opinions from medical experts . . . .") (emphasis added). The regulation providing for medical expert testimony is thus permissive and not mandatory. In addition, when the record contains sufficient evidence for an ALJ to decide a disability claim absent expert medical testimony, a failure to solicit expert medical testimony will not serve as a basis to reverse an ALJ's decision. *Harrison v. Astrue*, No. 1:11-cv-00117, 2012 WL 130880, at *11 (N.D. Ohio Jan. 3, 2012) (citing *Williams v. Callahan,* No. 97-3601, 1998 WL 344073, *4 n.3 (6th Cir. May 26, 1998). Here, the record contains sufficient evidence for the ALJ to decide plaintiff's disability claim. Accordingly, the ALJ adequately developed the record in this case and was under no duty to develop it more fully.

### 2. Substantial evidence supports the ALJ's RFC determination

Plaintiff argues that the ALJ erred in finding that she had the RFC to perform light work subject to limitations. (Doc. 12 at 17). More specifically, plaintiff contends that the ALJ erred in weighing the opinions of mental health therapist Jeff Yetter and psychiatrist Dr. Mitchell. (*Id.* at 17-18). Plaintiff also contends that the ALJ erred in affording little weight to the opinion of her mother, a lay witness, who provided information on her bipolar disorder diagnosis, troubled relationships with others, and family history of bipolar disorder. (*Id.*).

#### a. Substantial evidence supports the ALJ's determination that therapist Jeff Yetter's opinion was "not entitled to any special weight"

Plaintiff argues that the ALJ should have given deference to the opinion of therapist Jeff Yetter. (Doc. 12 at 18). Plaintiff saw Mr. Yetter for two visits beginning in May 2014. (Tr. 678). On June 12, 2014, Mr. Yetter issued a medical source statement co-signed by psychiatrist Dr. Mitchell. (Tr. 678-80). In the medical source statement, Mr. Yetter specified plaintiff's diagnoses as mood disorder NOS and anxiety disorder NOS. (Tr. 678). He identified plaintiff's

9

signs and symptoms as follows: appetite disturbance with weight change, decreased energy, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, persistent disturbances of mood or affect, and sleep disturbance. (*Id.*). Mr. Yetter evaluated plaintiff's mental abilities and aptitude needed to do particular types of jobs and opined that she would be unable to meet competitive standards. (*Id.* at 679). He estimated that plaintiff would likely be absent from work for more than four days per month as a result of her impairments. (*Id.* at 680).

After determining that licensed professional clinical counselors are not acceptable medical sources, the ALJ found that Mr. Yetter's opinion was "not entitled to any special weight" in accordance with the criteria set forth in 20 C.F.R. § 404.1527 and Social Security Rulings 96-2p, 96-5p, and 06-03p. (Tr. 19-20).

Although therapists do not qualify as "acceptable medical sources" under the regulations, an ALJ must consider all relevant evidence. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) (citing Soc. Sec. Rul. No. 06-03p, 2006 WL 2329939, at *4 (Soc. Sec. Admin. Aug. 9, 2006)). Further, an ALJ must weigh the opinions of "other sources," such as therapists, using the factors set forth in 20 C.F.R. § 404.1527(c), taking into consideration "how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment." *Barrett v. Comm'r of Soc. Sec.*, No. 3:16-cv-00119, 2017 WL 2790666, at *4 (S.D. Ohio June 28, 2017).

The ALJ reasonably determined that Mr. Yetter's opinion was not entitled to any special weight. The medical evidence reveals that plaintiff received counseling from Mr. Yetter only on two occasions. (Tr. 678). In addition, Mr. Yetter's opinion was rendered on June 12, 2014—over eight years after plaintiff's last insured date of March 31, 2006. (Tr. 680). Plaintiff has made no attempt to show how Mr. Yetter's opinion relates back to her condition before her insured status lapsed. *See King v. Sec'y of H.H.S.*, 896 F.2d 204, 205-06 (6th Cir. 1990) (post-expiration evidence may be considered, but it must relate back to plaintiff's condition prior to the expiration of the date last insured). Thus, Mr. Yetter's opinion lacks probative value in determining whether plaintiff was disabled at any time from her alleged onset date of December 2005 through her last insured date of March 2006. (Tr. 217). *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (noting that a plaintiff must prove that she was disabled before the insured status expires); *Strong v. Soc. Sec. Admin.*, 88 Fed. App'x 841, 845 (6th Cir. 2004) (explaining that any evidence of disability obtained after the date last insured is generally of little probative value). Accordingly, the ALJ did not err in finding that Mr. Yetter's opinion was not entitled to special weight.

### b. Substantial evidence supports the ALJ's determination that Dr. Mitchell's opinion was entitled to "no weight"

Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Mitchell, a psychiatrist, because he "failed to consider that Dr. Mitchell countersigned Mr. Yetter's opinion, indicating a supervisory, not treatment, relationship, and also failed to consider that Dr. Mitchell could have provided a retrospective diagnosis if re-contacted." (Doc. 12 at 18).

The ALJ found that the June 2014 medical source statement completed by Dr. Mitchell was "entitled to no weight . . . as no treatment records were provided to support the opinion, but

11

more importantly, it was rendered years after the date last insured, and lacks any probative value in this matter." (Tr. 19).

The ALJ's determination that Dr. Mitchell's opinion was entitled to no weight is supported by substantial evidence. Dr. Mitchell co-signed the medical source statement completed by Mr. Yetter on June 12, 2014. (Tr. 680). However, Dr. Mitchell did not examine plaintiff until June 17, 2014, five days later. (Tr. 683). Dr. Mitchell's treatment note from that date point out plaintiff's history of bipolar disorder, depression, and anxiety, and also recommend further counseling with Mr. Yetter. (*Id.*). However, there is nothing in Dr. Mitchell's progress note or the medical source statement indicating that plaintiff's condition in 2014 was similar to her condition in 2005 through March 2006, the period at issue in this case. Finally, Dr. Mitchell was an examining, not a treating, physician and therefore his opinion was entitled to no special deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997) ("In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once.").

To the extent that plaintiff argues that the ALJ was required to recontact Dr. Mitchell (Doc. 12 at 18), her argument is not well-taken. The regulation in effect at the time of the ALJ's decision specified that recontacting a medical source is permissive, not mandatory, where there is insufficient evidence to make a disability decision. *See* 20 C.F.R. § 404.1520b(c)(1) (2014). ("We *may* recontact your treating physician, psychologist, or other medical source.")[4]. Here, the evidence before the ALJ was not insufficient and there was no reason for the ALJ to recontact Dr. Mitchell regarding his June 12, 2014 medical source statement. Plaintiff was examined on a single occasion by Dr. Mitchell and his opinion was rendered over eight years after the date last

---

[4] Effective March 27, 2017, the regulation was amended and again provides that recontacting a medical source is permissive and not mandatory. 20 C.F.R. § 404.1520b(b)(2)(i) ("[w]e may recontact your medical source.").

12

insured. Accordingly, the ALJ was not required to recontact Dr. Mitchell and did not err in finding that his opinion was entitled to no weight.

### c. Substantial evidence supports the ALJ's credibility determination of plaintiff's mother

Plaintiff argues that the ALJ erred in rejecting the third party statement made by her mother, Connie Berryman. On June 11, 2014, Ms. Berryman reported that plaintiff had demonstrated symptoms of bipolar disorder since she was a teenager, and had been diagnosed with bipolar disorder ten years earlier. (Tr. 344). Ms. Berryman indicated that plaintiff "suffers from mood swings from mania to depression." (*Id.*). She also gave information concerning plaintiff's inability to complete projects, irritability towards others, and family history of bipolar disorder. (*Id.*). Plaintiff contends that the ALJ erred in rejecting her mother's statements because she "gave detailed information concerning symptoms including statements concerning Plaintiff's troubled relationships with others; finally, she indicated that bipolar disorder runs in the immediate family and provided a phone number for the ALJ or anyone else to contact her for further information." (Doc. 12 at 18). Plaintiff cites to Social Security Ruling 06-03p, asserting that evidence of family members can be used to show the severity of plaintiff's impairments and how it affects her ability to work. (*Id.*).

The ALJ considered Ms. Berryman's opinion under Social Security Ruling 06-03p as evidence from a "nonmedical source" and determined that her opinion was "not entitled to any special weight under the facts and circumstances of the particular case." (Tr. 20). The ALJ noted that plaintiff's mother was not a mental health professional, was not an objective witness given the familial relationship, and did not make the statement until several years after the date last insured. (*Id.*).

13

Ms. Berryman, as plaintiff's mother, is considered an "other nonmedical source" under the Social Security regulations. *See* 20 C.F.R. § 404.1513(d)(4). This regulation provides that "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, [which the ALJ is required to consider, the ALJ] *may also* use evidence from other sources to show the severity" of a claimant's impairments. 20 C.F.R. § 404.1513(d) (emphasis added).[5] The assessment of the credibility of lay witnesses, as well as the weight to attribute to their testimony, is peculiarly within the judgment of the ALJ. The testimony of a lay witness "must be given 'perceptible weight' [only] where it is supported by medical evidence." *Allison v. SSA*, No. 96–3261, 1997 WL 103369, at *3 (6th Cir. 1997) (citing *Lashley*, 708 F.2d at 1054) ("Perceptible weight must be given to lay testimony where . . . it is fully supported by the reports of the treating physicians."). *See also Simons*, 114 F. App'x at 733.

Here, the ALJ fulfilled his obligation under the Social Security regulations and rulings. The ALJ acknowledged and considered Ms. Berryman's statements. The ALJ reasonably considered Ms. Berryman's relationship to the plaintiff and the eight year gap between plaintiff's date last insured and when Ms. Berryman issued her statements. In addition, he was not required to give any further consideration or "weight" to Ms. Berryman's statements as they were unsupported by the sparse medical evidence of record from the relevant period of December 31, 2005 through March 31, 2006. (Tr. 684-694). Accordingly, the ALJ did not err in weighing the opinion of plaintiff's mother.

### 3. Substantial evidence supports the ALJ's credibility determination

---

[5] Effective March 27, 2017, the regulations were amended and provide, "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim. We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records." 20 C.F.R. § 404.1513(a)(4).

14

Plaintiff argues that the ALJ did not correctly determine her own credibility. (Doc. 12 at 19). Plaintiff asserts that when SSR 16-3p superseded SSR 96-7p in March 2016, "credibility as a function of character in disability findings has been deleted." (*Id.*). Plaintiff also argues that the ALJ failed to consider certain factors when evaluating her credibility, including "statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history; daily activities; consistency of the individual's statements (both internally and as compared to other evidence); *a longitudinal record of treatment;* and attempts to seek treatment for pain." (Doc. 12 at 19) (emphasis in the original). At the July 9, 2014 hearing, plaintiff testified that she received treatment for mental health conditions in 2005 and 2006. (Tr. 46). She explained that these conditions caused her to become manic, depressed, anxious, and sleep deprived. (*Id.*). In stating that these conditions affected her ability to work, plaintiff explained that she would often make mistakes at work and get irritated with people. (*Id.* at 47). She also expounded upon her physical conditions, including a fibromyalgia diagnosis and body ache symptoms. (*Id.* at 48).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for

meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Title 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p.[6] "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

The Court finds that the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. The ALJ cited five primary reasons for finding

---

[6] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively. Therefore, the Ruling does not apply in this case, as the ALJ made his determination on November 21, 2014. Plaintiff's argument to the contrary is not well-taken. *Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

that plaintiff's subjective allegations and complaints were not fully credible to the extent they would preclude a restricted range of light work: (1) there was no evidence of adverse side effects from treatment or medications that would have prevented the plaintiff from working at the light level of exertion through the date last insured; (2) no treating or examining source reported that the plaintiff was disabled through the date last insured; (3) plaintiff's severe impairments did not significantly restrict her activities of daily living; (4) plaintiff did not apply for disability benefits for nearly six years after the alleged onset date; and (5) there was little evidence of any ongoing medical treatment until after the date last insured. (Tr. 21). The ALJ also noted that plaintiff presented no medical evidence of hospitalizations or surgical intervention for her complaints of chronic back pain and only required prescription pain medication treatment. (*Id*). In addition, although the record indicated that plaintiff received extensive treatment for back pain after a car accident in November 2007, such treatment and studies were "performed well after the date last insured, and do not document the presence of these conditions during the time at issue." (*Id.*). Further, notes showing plaintiff's treatment for depression and attention deficit disorder did not indicate that her prescribed "medication failed to control her symptoms." (*Id.*).

Here, plaintiff has not shown that the ALJ committed any error in connection with the assessment of plaintiff's credibility. The ALJ considered plaintiff's testimony about her symptoms and properly concluded that there was no objective medical evidence to support her testimony for the relevant period. (Tr. 21). The record contains few medical or treatment records during the relevant period, and that information does not establish that plaintiff did not have the residual functional capacity to perform light work at that time. Further, as plaintiff concedes, "many of these contacts [present in the record covering relevant period] were phone contacts, and many were for prescriptions or to change prescriptions." (Doc. 12 at 7). There is

simply no evidence, objective or otherwise, to support plaintiff's testimony regarding her limitations and pain through the date last insured. As explained above, the issue the Court must decide is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of H.H.S.*, 987 F.3d 1230, 1233 (6th Cir. 1993); 42 U.S.C. § 405(g). Accordingly, the ALJ's credibility finding is supported by substantial evidence and is therefore entitled to deference.

### III. Conclusion

In sum, the ALJ did not violate his duty to fully and fairly develop the record. Substantial evidence supports the weight given to Mr. Yetter and Dr. Mitchell. Substantial evidence also supports the weight given to the statements of plaintiff's mother. Further, substantial evidence supports the ALJ's credibility determination of plaintiff's testimony. Accordingly, plaintiff's assignments of error are overruled.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner is **AFFIRMED** and this case is closed on the docket of the Court.

Date: 10/17/17

Karen L. Litkovitz
United States Magistrate Judge